CENTER FOR DISABILITY ACCESS
Raymond Ballister Jr., Esq., SBN 111282
Russell Handy, Esq., SBN 195058
Amanda Seabock, Esq., SBN 289900
Zachary Best, Esq., SBN 166035
<u>Mail</u>: 8033 Linda Vista Road, Suite 200
San Diego, CA 92111
(858) 375-7385; (888) 422-5191 fax
amandas@potterhandy.com

Attorneys for Plaintiff

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| **Mary Rios,**<br><br>    Plaintiff,<br><br>**v.**<br><br>**Felcor/CSS Holdings, L.P.,** a Delaware Limited Partnership;<br><br>**Felcor/CSS Hotels, LLC**, a Delaware Limited Liability Company;<br><br>    Defendants, | **Case No**.<br><br>**Complaint For Damages And Injunctive Relief For Violations Of:** Americans With Disabilities Act; Unruh Civil Rights Act |

Plaintiff Mary Rios complains of Felcor/CSS Holdings, L.P., a Delaware Limited Partnership; Felcor/CSS Hotels, LLC, a Delaware Limited Liability Company; ("Defendants"), and alleges as follows:

**PARTIES:**

1. Plaintiff is a California resident with physical disabilities. She is substantially limited in her ability to walk. She is a paraplegic. She uses a wheelchair for mobility.

2. Defendants Felcor/CSS Holdings, L.P., a Delaware Limited

1

Complaint

Partnership; Felcor/CSS Hotels, LLC, a Delaware Limited Liability Company; own and operate the Embassy Suites by Hilton San Francisco Airport Waterfront Hotel, located at 150 Anza Blvd., Burlingame, California, currently and at all times relevant to this complaint.

3.   Plaintiff does not know the true names of Defendants, their business capacities, their ownership connection to the property and business, or their relative responsibilities in causing the access violations herein complained of, and alleges a joint venture and common enterprise by all such Defendants. Plaintiff is informed and believes that each of the Defendants herein, is responsible in some capacity for the events herein alleged, or is a necessary party for obtaining appropriate relief. Plaintiff will seek leave to amend when the true names, capacities, connections, and responsibilities of other Defendants are ascertained.

**JURISDICTION:**

4.   The Court has subject matter jurisdiction over the action pursuant to 28 U.S.C. § 1331 and § 1343(a)(3) & (a)(4) for violations of the Americans with Disabilities Act of 1990, 42 U.S.C. § 12101, et seq.

5.   Pursuant to supplemental jurisdiction, an attendant and related cause of action, arising from the same nucleus of operative facts and arising out of the same transactions, is also brought under California's Unruh Civil Rights Act, which act expressly incorporates the Americans with Disabilities Act.

6.   Venue is proper in this court pursuant to 28 U.S.C. § 1391(b) and is founded on the fact that the real property which is the subject of this action is located in this district and that Plaintiff's cause of action arose in this district.

**PRELIMINARY STATEMENT**

7.   This is a lawsuit challenging the reservation policies and practices of a

Complaint

place of lodging. Plaintiff does not know if any physical or architectural barriers exist at the hotel and, therefore, is not claiming that that the hotel has violated any construction-related accessibility standard. Instead, this is about the lack of information provided on the hotel's reservation website that would permit plaintiff to determine if there are rooms that would work for him.

8.   After decades of research and findings, Congress found that there was a "serious and pervasive social problem" in America: the "discriminatory effects" of communication barriers to persons with disability. The data was clear and embarrassing. Persons with disabilities were unable to "fully participate in all aspects of society," occupying "an inferior status in our society," often for no other reason than businesses, including hotels and motels, failed to provide information to disabled travelers. Thus, Congress decided "to invoke the sweep of congressional authority" and issue a "national mandate for the elimination of discrimination against individuals with disabilities," and to finally ensure that persons with disabilities have "equality of opportunity, full participation, independent living" and self-sufficiency.

9.   As part of that effort, Congress passed detailed and comprehensive regulations about the design of hotels and motels. But, as importantly, Congress recognized that the physical accessibility of a hotel or motel means little if the 61 million adults living in America with disabilities are unable to determine which hotels/motels are accessible and to reserve them. Thus, there is a legal mandate to provide a certain level of information to disabled travelers.

10.  But despite the rules and regulations regarding reservation procedures, a 2019 industry article noted that: "the hospitality sector has largely overlooked the importance of promoting accessible features to travelers."

11. These issues are of paramount important. Persons with severe disabilities have modified their own residences to accommodate their unique

needs and to ameliorate their physical limitations. But persons with disabilities are never more vulnerable than when leaving their own residences and having to travel and stay at unknown places of lodging. They must be able to ascertain whether those places work for them.

**FACTUAL ALLEGATIONS:**

12. Plaintiff planned on making a trip in October to the San Francisco, California, area.

13. She chose the Embassy Suites by Hilton San Francisco Airport Waterfront Hotel, located at 150 Anza Blvd., Burlingame, California, because this hotel was at a desirable price and location.

14. Due to Plaintiff's condition, she is unable to, or seriously challenged in her ability to, stand, ambulate, reach objects, transfer from her chair to other equipment, and maneuver around fixed objects.

15. Thus, Plaintiff needs an accessible guestroom and she needs to be given information about accessible features in hotel rooms so that she can confidently book those rooms and travel independently and safely.

16. On September 17, 2020, while sitting bodily in California, Plaintiff went to the Marriott San Francisco Union Square reservation website at https://www.hilton.com/en/hotels/sfobges-embassy-suites-san-francisco-airport-waterfront/ seeking to book an accessible room at the location.

17. This website reservation system is owned and operated by the Defendants and permits guests to book rooms at Embassy Suites by Hilton San Francisco Airport Waterfront Hotel.

18. Plaintiff found that there was insufficient information about the accessible features in the "accessible rooms" at the Hotel to permit her to assess independently whether a given hotel room would work for her.

19. For example, Plaintiff needs to know that the bed has a compliant clear

Complaint

space next to it so she can safely transfer from her wheelchair to the bed. Here the Hotel website provides no information about the accessibility of the clear space next to the bed.

20. As another example, Plaintiff has had tremendous difficulty using desks and tables that did not provide knee and toe clearance for a wheelchair user to pull up and under the table/desk. Here, the Hotel reservation website provides no information about the accessibility of the table/desk in the accessible guestroom. This leaves Plaintiff unsure she will be able to use the table/desk in the Hotel room, which is important to her.

21. As another example, Plaintiff has had tremendous difficulty with using lavatory sinks in the past because sinks were cabinet style sinks or had low hanging aprons that did not provide knee clearance for a wheelchair user to pull up and under or, alternatively, where the plumbing underneath the sink was not wrapped with insulation to protect against burning contact to her knees. Here, the Hotel reservation website provides no information about the accessibility of the sinks in the accessible guestroom. Making matters worse, the photos that accompany the room descriptions state: "Any corresponding photo may not reflect the specific accessible room type or room feature". This makes it even less clear if the room is accessible to Plaintiff.

22. Plaintiff does not need an exhaustive list of accessibility features. Plaintiff does not need an accessibility survey to determine of a room works for her. Plaintiff, like the vast majority of wheelchair users, simply needs a handful of features to be identified and described with a modest level of detail:

- For the doors, Plaintiff simply needs to know if she can get into the hotel room and into the bathroom. This is a problem that has created tremendous problems for the Plaintiff in the past. A simple statement that the hotel room entrance and interior doors provide at least 32 inches of clearance is enough to provide Plaintiff this critical piece of

1  information about whether she can fit her wheelchair into the hotel
2  rooms.
3  • For the beds themselves, the only thing Plaintiff needs to know (and the
4    only thing regulated by the ADA Standards) is whether she can actually
5    get to (and into) the bed, i.e., that there is at least 30 inches width on the
6    side of the bed so her wheelchair can get up next to the bed for transfer.
7    This is critical information because Plaintiff cannot walk and needs to
8    pull her wheelchair alongside the bed.
9  • For the desk where Plaintiff will eat and work, Plaintiff simply needs to
10   know that it has sufficient knee and toe clearance so that she can use it.
11   A simple statement like "the desk provides knee and toe clearance that
12   is at least 27 inches high, 30 inches wide, and runs at least 17 inches
13   deep" is more than sufficient. Because Plaintiff is confined to a
14   wheelchair, she needs to know this information to determine if the desk
15   is accessible to and useable by her.
16  • For the restroom toilet, Plaintiff only needs to know two things that
17    determine if she can transfer to and use the toilet; (1) that the toilet seat
18    height is between 17-19 inches (as required by the ADA Standards) and
19    (2) that it has the two required grab bars to facilitate transfer.
20  • For the restroom sink, the Plaintiff two things that will determine
21    whether she can use the sink from her wheelchair: (1) can she safely get
22    her knees under the toilet? To wit: does the sink provide the knee
23    clearance (27 inches high, 30 inches wide, 17 inches deep) and is any
24    plumbing under the sink wrapped with insulation to protect against
25    burning contact?  The second thing is whether the lavatory mirror is
26    mounted at a lowered height so that wheelchair users can sue it. A
27    simple statement like: "the lavatory sink provides knee clearance of at
28    least 30 inches wide, 27 inches tall and 17 inches deep, all of the under-

Complaint

sink plumbing is wrapped, and the lowest reflective edge of the mirror is no more than 40 inches high" would suffice.

- Finally, for the shower, Plaintiff needs to know only a handful of things: (1) what type of shower it is (transfer, standard roll-in, or alternate roll-in), (2) whether it has an in-shower seat; (3) that there are grab bars mounted on the walls; (4) that there is a detachable hand-held shower wand for washing herself and (5) that the wall mounted accessories and equipment are all within 48 inches height.

23. This small list of items are the bare necessities that Plaintiff must know to make an independent assessment of whether the "accessible" hotel room works for her. These things comprise the basics of what information is reasonably necessary for Plaintiff (or any wheelchair user) to assess independently whether a given hotel or guest room meets his or her accessibility needs.

24. Other accessibility requirements such as slopes of surfaces, whether the hand-held shower wand has a non-positive shut off valve, the temperature regulator, the tensile strength and rotational design of grab bars, and so many more minute and technical requirements under the ADA are beyond what is a reasonable level of detail and Plaintiff does not expect or demand that such information is provided.

25. But because the Defendants have failed to identify and describe the core accessibility features in enough detail to reasonably permit individuals with disabilities to assess independently whether a given hotel or guest room meets her accessibility needs, the Defendants fail to comply with its ADA obligations and the result is that the Plaintiff is unable to engage in an online booking of the hotel room with any confidence or knowledge about whether the room will actually work for her due to her disability.

26. This lack of information created difficulty for the Plaintiff and the idea

Complaint

of trying to book this room -- essentially ignorant about its accessibility -- caused difficulty and discomfort for the Plaintiff and deterred her from booking a room at the Hotel

27. Plaintiff travels frequently and extensively, not only for non-litigation reasons but also because she is an ADA tester and actively engaged in finding law breaking businesses and hauling them before the courts to be penalized and forced to comply with the law.

28. As she has in the past, Plaintiff will continue to travel to the San Francisco area on a regular and ongoing basis and will patronize this Hotel once it has been represented to her that the Defendant has changed its policies to comply with the law and to determine if the Hotel is physically accessible as well as complying with required reservation procedures. Plaintiff will, therefore, be discriminated against again, i.e., be denied her lawfully entitled access, unless and until the Defendant is forced to comply with the law.

29. Plaintiff has reason and motivation to use the Defendant's Hotel reservation system and to stay at the Defendant's Hotel in the future. Among her reasons and motivations are to assess these policies and facilities for compliance with the ADA and to see her lawsuit through to successful conclusion that will redound to the benefit of herself and all other similarly situated. Thus, Plaintiff routinely revisits and uses the facilities and accommodations of places she has sued to confirm compliance and to enjoy standing to effectuate the relief promised by the ADA.

**I. FIRST CAUSE OF ACTION: VIOLATION OF THE AMERICANS WITH DISABILITIES ACT OF 1990** (On behalf of Plaintiff and against all Defendants.) (42 U.S.C. section 12101, et seq.)

30. Plaintiff re-pleads and incorporates by reference, as if fully set forth again herein, the allegations contained in all prior paragraphs of this

Complaint

complaint.

31. Under the ADA, it is an act of discrimination to fail to make reasonable modifications in policies, practices, or procedures when such modifications are necessary to afford goods, services, facilities, privileges advantages or accommodations to person with disabilities unless the entity can demonstrate that taking such steps would fundamentally alter the nature of the those goods, services, facilities, privileges advantages or accommodations. See 42 U.S.C. § 12182(B)(2)(A)(ii).

32. Specifically, with respect to reservations by places of lodging, a defendant must ensure that its reservation system, including reservations made by "any means," including by third parties, shall:

    a. Ensure that individuals with disabilities can make reservations for accessible guest rooms during the same hours and in the same manner as individuals who do not need accessible rooms;

    b. Identify and describe accessible features in the hotels and guest rooms offered through its reservations service in enough detail to reasonably permit individuals with disabilities to assess independently whether a given hotel or guest room meets his or her accessibility needs; and

    c. Reserve, upon request, accessible guest rooms or specific types of guest rooms and ensure that the guest rooms requested are blocked and removed from all reservations systems.

*See* 28 C.F.R. § 36.302(e).

33. Here, the defendant failed to modify its reservation policies and procedures to ensure that it identified and described accessible features in the hotels and guest rooms in enough detail to reasonably permit individuals with

Complaint

disabilities to assess independently whether a given hotel or guest room meets his or her accessibility needs and failed to ensure that individuals with disabilities can make reservations for accessible guest rooms during the same hours and in the same manner as individuals who do not need accessible rooms.

**II. SECOND CAUSE OF ACTION: VIOLATION OF THE UNRUH CIVIL RIGHTS ACT** (On behalf of Plaintiff and against all Defendants.) (Cal. Civ. Code § 51-53.)

34. Plaintiff repleads and incorporates by reference, as if fully set forth again herein, the allegations contained in all prior paragraphs of this complaint.  The Unruh Civil Rights Act ("Unruh Act") guarantees, inter alia, that persons with disabilities are entitled to full and equal accommodations, advantages, facilities, privileges, or services in all business establishment of every kind whatsoever within the jurisdiction of the State of California.  Cal. Civ. Code §51(b).

35. The Unruh Act provides that a violation of the ADA is a violation of the Unruh Act.  Cal. Civ. Code, § 51(f).

36. Defendants' acts and omissions, as herein alleged, have violated the Unruh Act by, inter alia, failing to comply with the ADA with respect to its reservation policies and practices.

37. Because the violation of the Unruh Civil Rights Act resulted in difficulty and discomfort for the plaintiff, the defendants are also each responsible for statutory damages, i.e., a civil penalty. *See* Civ. Code § 52(a).

**PRAYER**:

Wherefore, Plaintiff prays that this Court award damages and provide relief as follows:

Complaint

1. For injunctive relief, compelling Defendants to comply with the Americans with Disabilities Act and the Unruh Civil Rights Act. Note: the plaintiff is not invoking section 55 of the California Civil Code and is not seeking injunctive relief under the Disabled Persons Act at all.

2. Damages under the Unruh Civil Rights Act, which provides for actual damages and a statutory minimum of $4,000 for each offense.

3. Reasonable attorney fees, litigation expenses and costs of suit, pursuant to 42 U.S.C. § 12205; and Cal. Civ. Code § 52(a).

Dated: January 11, 2021                    CENTER FOR DISABILTY ACCESS

By:_____
Russell Handy, Esq.
Attorneys for Plaintiff

11

Complaint